# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Maria Lopez-Vega<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>)     3:25-mj- 1065-LLL<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 3, 2025,__ in the county of __Columbia and elsewhere__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(i) | Transportation of aliens who are unlawfully present in the United States for the purpose of financial gain |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Matthew Zetts, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 6, 2025

_____
*Judge's signature*

City and state:    Jacksonville, FL     Laura Lothman Lambert, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Matthew A. Zetts Jr., being a duly sworn and appointed Border Patrol Agent for the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, hereby make the following statement:

1. I am a Border Patrol Agent for the United States Border Patrol and have been so employed for over 15 years. I have training and experience in the enforcement of the immigration and nationality laws of the United States. In addition, I have training and experience in the preparation, presentation, and service of criminal complaints and arrest warrants.

2. The statements contained in this affidavit are based on my personal experience and observations as well as the experiences and observations of fellow Border Patrol Agents and other law enforcement officers as they have described them to me. This affidavit does not contain every fact regarding the investigation but sets forth sufficient facts to establish probable cause to believe that on February 3, 2025, Maria LOPEZ-VEGA, a citizen of Mexico, transported aliens unlawfully present in the United States for the purpose of private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i).

3. From my training and experience, I know that criminal alien smuggling operations transport illegal aliens unlawfully in the United States from the border with Mexico to staging cities near the border in California, Arizona, New Mexico, and Texas. After they arrive in these cities, alien smugglers load the illegal aliens into vehicles and transport them to metropolitan areas in the United States. This

travel is often broken into several different segments utilizing different drivers and vehicles to minimize detection. The smuggled illegal aliens are primarily from Mexico, Guatemala, Honduras, and El Salvador. Smuggling cartels in the United States are usually operated by Mexican nationals from Mexico and within the United States.

4. According to Florida Highway Patrol (FHP) Trooper D. Morgan's report, on February 3, 2025, at approximately 9:22 a.m., Florida Highway Patrol (FHP) Trooper D. Morgan witnessed a gray Hyundai Santa Fe bearing Texas tag VVB6077 on Interstate-75 (I-75) southbound near mile marker 405. The Hyundai Santa Fe matched the description of a sports utility vehicle (SUV) for which FHP and Border Patrol had received intelligence that it was transporting aliens between Texas and Florida. Trooper Morgan conducted a traffic stop on the vehicle near mile marker 402 in Alachua County. The vehicle was stopped for following too close to the vehicle in front of it. Trooper Morgan asked the driver for her identification. The driver showed Trooper Morgan a picture of a Mexican passport on her phone, which identified herself as Maria LOPEZ-VEGA. LOPEZ-VEGA told Trooper Morgan that she did not have a driver's license.

5. Trooper Morgan asked the five passengers for identification. The front passenger gave a Mexican identification card with the name J.L.H. The four rear passengers initially indicated they did not have identification.

6. Trooper Morgan asked LOPEZ-VEGA to exit the vehicle and stand at the right front of his patrol vehicle. LOPEZ-VEGA told Trooper Morgan she picked

up the passengers from Mexico and was taking them to Tampa, Florida. LOPEZ-VEGA said they were going to stay three days to a week in Tampa, Florida. Trooper Morgan did not see any luggage in the vehicle.

7. At approximately 9:27 a.m., Trooper Morgan called Border Patrol Agent (BPA) Stephen Garland to request assistance on the vehicle stop. Trooper Morgan told BPA Garland that the Hyundai Santa Fe would have traveled through Columbia County due to the location he initially witnessed it southbound on I-75. Trooper Morgan said there were no on-ramps that would allow the vehicle to enter the interstate where he witnessed it except for those in Columbia County. BPA Garland called BPA Thomas Shaffer to assist Trooper Morgan. BPA Shaffer arrived at the traffic stop in a marked Border Patrol vehicle and in full rough duty uniform within a few minutes of receiving the call for assistance. Trooper Morgan was still attempting to confirm the identity of LOPEZ-VEGA.

8. BPA Shaffer assisted Trooper Morgan with the identification of LOPEZ-VEGA. BPA Shaffer identified himself as a Border Patrol Agent to LOPEZ-VEGA and questioned LOPEZ-VEGA about her citizenship. LOPEZ-VEGA stated she was from Mexico. BPA Shaffer asked LOPEZ-VEGA if she had any immigration documents, and she said no. BPA Shaffer placed LOPEZ-VEGA under administrative arrest for being illegally present in the United States and secured her in his vehicle.

9. BPA Shaffer identified himself as a Border Patrol Agent to the five passengers, identified as I.C.B.A., M.G.D., E.J.T., J.L.H., and Y.D.L.F., and

questioned the five passengers about their citizenship. I.C.B.A. claimed to be a citizen of Mexico. M.G.D. claimed to be a citizen of Honduras. E.J.T. claimed to be a citizen of Guatemala. J.L.H. claimed to be a citizen of Mexico. Y.D.L.F. claimed to be a citizen of Guatemala. BPA Shaffer asked all five passengers if they had any immigration documents that would allow them to be legally in the United States. All five passengers told BPA Shaffer they did not have any immigration documents. BPA Shaffer placed all five passengers under administrative arrest for being illegally present in the United States.

10. Trooper Morgan queried the Florida Crime Information Center and the National Crime Information Center databases and found that LOPEZ-VEGA did not have a driver's license. Trooper Morgan issued a notice to appear to LOPEZ-VEGA for driving without a license and following too closely.

11. BPA Armondo Martinez conducted a record check on the owner of the vehicle in the National Law Enforcement Telecommunications System (NLETS). NLETS is a nationwide database used by state and federal law enforcement to share data. NLETS indicated that the vehicle was registered to a person who was not in the car. NLETS also reflected that the vehicle was recently sold to the listed owner on December 10, 2024. At the time of sale, the odometer was recorded having 252,986 miles. During the traffic stop, a vehicle inventory search indicated an odometer mileage of 271,243. This high mileage in a short amount of time is commonly seen in vehicles used to smuggle aliens from the United States/Mexico border to Florida and other states in reoccurring trips.

12. All six vehicle occupants were transported to the Jacksonville Border Patrol Station for processing, record checks and interviews.

13. At the Border Patrol Station, I personally observed BPAs Ramon Poventud and John Blades entered all six of the subjects' fingerprints, names, and dates of birth into the e3/NextGen system. The e3/NextGen system is routinely used by Border Patrol Agents to check and record biometric data, including the fingerprints of individuals encountered, and to compare them to other known previously encountered individuals. The e3/NextGen returned a positive match for I.C.B.A. I.C.B.A. was previously removed from the United States on January 29, 2025. The e3/NextGen also returned a positive match for J.L.H. J.L.H. was previously removed from the United States on January 25, 2025. There was no record of I.C.B.A or J.L.H. ever applying for permission to enter, pass through, or remain in the United States. e3/NextGen indicated LOPEZ-VEGA, E.J.T., M.G.D., and Y.D.L.F. had no prior encounters with immigration authorities. I queried the U.S. Customs and Border Protection Super Query database on the subjects' names and dates of birth. Records revealed that all six subjects had no claims or applications that would allow them to be in the United States legally.

14. HSI SA Scott Kraich and BPAI Armando Martinez interviewed I.C.B.A. After the interview, SA Kraich and BPAI Martinez provided me a summary of I.C.B.A.'s statements. He stated he was born in Mexico and is a citizen of Mexico. He does not possess any immigration documents. He stated his uncle paid smugglers to get him into the United States. After making entry into the United

States, he was picked up by a female driver and taken to Florida. He believed the drivers name to be Maria. I.C.B.A. stated that he told the female driver how he had crossed illegally into the United States and was transported to several different houses and vehicles before he got to into the car with Maria. I.C.B.A. stated Maria told him that it's a long drive, but she has done it on several occasions and is used to the long drive. He identified LOPEZ-VEGA as the driver in a photo lineup.

15. BPA Hernandez-Ramos and BPA Michael Wright interviewed Y.D.L.F. After the interview, BPA Hernandez-Ramos and BPA Wright provided me a summary of Y.D.L.F.'s statements. Y.D.L.F. stated he was born in Guatemala. He admitted that he does not possess any immigration documents. He acknowledged he is unlawfully present in the United States and had entered the United States approximately one week before his arrest. He stated his mother arranged to pay the smugglers upon his arrival to Florida. Y.D.L.F. confirmed he was picked up by a female driver in an SUV once he was in the United States. He said the driver was aware of his immigration status because she asked him about his country of origin, and he told the driver that he was from Guatemala. He identified LOPEZ-VEGA as the driver in a photo lineup.

16. At approximately 4:11 p.m., BPA Miranda and HSI SA Algozzini conducted an interview of LOPEZ-VEGA. After the interview, BPA Miranda and SA Algozzini provided me a summary of LOPEZ-VEGA's statements. LOPEZ-VEGA's Miranda rights were read to her in Spanish by SA Miranda and witnessed by SA Algozzini. She was asked if she understood her rights, and she stated she did.

She was asked if she was willing to give her statement without a lawyer present and she stated yes. LOPEZ-VEGA signed a Miranda waiver form.

17. LOPEZ-VEGA stated her correct name is Maria Isaisa LOPEZ-VEGA. She stated that she was born in Guerrero, Mexico and that she last entered the United States 36 years ago. She stated that a male subject (herein referred to as Person A) picked her up from her house in Houston, Texas and drove her to a nearby location where a vehicle was on the side of a road with people waiting in it. A short time later Person A returned with additional people. She then drove the vehicle to Florida. LOPEZ-VEGA said she met with Person A to move people, but she was not sure if the people are illegal, if they made recent entry into the United States, or if they have been living here in the United States for a while.

18. LOPEZ-VEGA claimed she gets paid $250 dollars per passenger. She claims that while she was driving toward Florida on I-10, she received a text message from Person A instructing her where to drop off each passenger individually.

19. LOPEZ-VEGA stated she has made a total of three trips and that her first trip was last week. On that trip she drove four passengers from Houston to Atlanta, Georgia and North Carolina. She was paid $250 dollars per passenger, for a total of $1000 for that trip. LOPEZ-VEGA stated that her second trip was also last week. She said on that trip she drove four passengers. She stated she typically transports four passengers per trip. LOPEZ-VEGA stated after each trip, she is paid in cash upon return to Houston, Texas.

20. Based upon the foregoing facts, I believe there is probable cause to establish that on February 3, 2025, Maria LOPEZ-VEGA transported aliens unlawfully present in the United States, for the purpose of private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i).

_____
Matthew A. Zetts Jr, Border Patrol Agent
United States Border Patrol

Sworn before me this 6th day of February 2025.

_____
LAURA LOTHMAN LAMBERT
United States Magistrate Judge